## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOYCE DARLENE JONES

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NO. 09-1066-RET-CN

## **NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

Signed in chambers in Baton Rouge, Louisiana, July 26, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

JOYCE DARLENE JONES

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NO. 09-1066-RET-CN

**MAGISTRATE JUDGE'S REPORT**

Plaintiff Joyce Darlene Jones, seeks judicial review of a final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. In making that final decision, the Administrative Law Judge (ALJ) reached the fifth step of the five-step sequential disability analysis set forth in 20 C.F.R. § 416.920(b)-(f),[1] and found that prior to April 16, 2007, plaintiff had the residual functional capacity (RFC) to perform other work in the national economy. (Tr. 534.)

**FACTS AND PROCEDURAL HISTORY**

On November 4, 2004, plaintiff filed applications for disability benefits and supplemental security insurance benefits alleging disability beginning on September 15, 2000, due to depression; asthma; osteoarthritis; colitis; fibromyalgia; pancreatitis; esophageal spasms; blurred vision; and pain the legs, hips, shoulders, stomach, and knees.

---

[1] Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

(Tr. 576-582, 584, 597.)[2]  Plaintiff's date of last insured is December 31, 2005, therefore, plaintiff must establish disability on or before December 31, 2005, (Tr. 524) in order to be entitled to a period of disability and disability insurance benefits.  Plaintiff's applications were denied initially on April 4, 2005, and after a timely request for hearing, the ALJ conducted an administrative hearing on June 7, 2007. (Tr. 524.)  Plaintiff, represented by counsel, appeared and testified at the hearing, along with a vocational expert (VE).   On November 30, 2007, the ALJ issued an adverse decision finding that plaintiff's degenerative disc disease of the lumbar and cervical spines, arthritis in the thumbs, chrondromalacia of the right knee, fibromyalgia, somatization disorder, and personality disorder were severe impairments, but that these impairments, neither alone nor in combination, met or equaled the requirements of any listed impairment (Tr. 527, Finding #3, Tr. 528, Finding # 4.)  The ALJ further determined that plaintiff's subjective complaints, as to the period prior to April 16, 2007, were credible only to the extent they were consistent with the objective medical evidence and the ALJ's conclusions in his decision of November 30, 2007. (Tr. 532.)

After consideration of the medical evidence and the record as a whole, the ALJ found that beginning on April 16, 2007, plaintiff had the residual functional capacity (RFC) to lift and carry ten pounds occasionally, stand and walk two hours in a workday; and sit six hours in a workday, with the ability to push and pull limited by the weight she

---

[2] The ALJ noted that Plaintiff protectively filed a prior application for Title II benefits on January 30, 2002 alleging a disability commencing on September 15, 2000.  (Tr. 24, 524.)   However, the ALJ noted that there was no new or material evidence that warranted the reopening of the prior determinations (Tr. 524.)  A prior decision which the ALJ expressly decides not to reopen is not reviewable by the Court. <u>Califano v. Sanders</u>, 430 U.S. 99, 107-08 (1977).

is able to lift and carry. (Tr. 532, Finding #6.) While the ALJ found that plaintiff was able to perform detailed, but not complex work activities, and was able to perform tasks requiring no more than limited interaction with the public, he also found that given plaintiff's age, education, work experience, and RFC, there were not a significant number of jobs in the national economy that plaintiff could perform. Therefore, beginning on April 16, 2007, the ALJ found that plaintiff was disabled and entitled to supplemental security income benefits only (Tr. 534, Finding #12.)

Prior to April 16, 2007, however, the ALJ found that plaintiff had the RFC to lift and carry ten pounds frequently and twenty pounds occasionally, stand and walk six hours in a workday and sit six hours in a workday. (Tr. 528, Finding #5.) He also found that plaintiff was able to perform detailed, but not complex work activities, and was able to perform tasks requiring no more than limited interaction with the public. (Tr. 528, Finding #5.) Because the ALJ found that plaintiff was unable to perform her past relevant work, he enlisted the testimony of the VE to determine if there were other jobs in the national economy, which plaintiff could perform. Based on the evidence in the record and the testimony of the VE, the ALJ found that plaintiff could perform other work existing in significant numbers in the national economy, and thus not disabled within the meaning of the Social Security Act at any time prior to April 16, 2007. (Tr. 533-34, Findings # 11 and 12.)

Plaintiff disagreed with this portion of the ALJ's decision and requested a review by the Appeals Council. On October 19, 2009, the Appeals Council declined plaintiff's

request and the ALJ's decision became the final decision of the Commissioner, which decision is now before this Court.

## **ANALYSIS**

Judicial review of a final decision of the ALJ denying disability insurance benefits and supplemental security income benefits is limited to two inquiries: (1) whether there is substantial evidence in the record as a whole to support the ALJ's findings, and (2) whether the ALJ applied the proper legal standards.[3] In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision. Id. Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. Id. A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. Id.

The burden of proof in disability administrative hearings rests predominately on the plaintiff, and toward that end, the plaintiff and the ALJ conduct a five-step analysis.[4] Only if the plaintiff proves that she is no longer able to work in her past relevant work

---

[3] Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

[4] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

does the burden shift to the Commissioner to establish that the plaintiff nonetheless has the ability to engage in other substantial gainful activity.[5]

Plaintiff argues that the ALJ's decision a) rejects the findings of treating physician Dr. Morgan without providing a reason; b) subordinates the findings of the treating physicians' to that of a non-examining physician; and c) rejects the findings of Dr. Young under the assumption that there is no evidence that he was a treating physician, yet the record is replete with evidence that Dr. Young was a treating physician at the critical time. Plaintiff also asserts that the defendant refused to order the treatment records of Dr. Young although specifically requested to do so by plaintiff.

Plaintiff states that the ALJ did not give a good reason for his decision to reject Dr. Morgan's opinion, however, the Court disagrees. The ALJ reviewed the medical evidence in the record and discussed it at length in his decision.(Tr. 529-530.) The ALJ noted that Dr. Morgan's progress notes during the relevant period documents complaints of pain in the thumbs with a diagnosis of arthritis and chrondromalacia in the right knee by subjective diagnosis only. (Tr. 529, 851.)[6] On August 2, 2005, x-rays of the right knee and both ankles revealed no abnormality, and there was no evidence of x-rays of the hands or thumbs having been performed. In 2006, plaintiff suffered a fracture of the left

---

[5] Rivers v. Schweiker, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

[6] As the ALJ noted, plaintiff has a long history of complaints of pain, including neck, back, thumb, and knee pain, but much of the evidence regarding these complaints pertain to the period prior to the August 26, 2004 ALJ decision and was considered in that decision. As previously stated, the ALJ found no basis for reopening that decision, therefore his decision focused on evidence regarding the plaintiff's ability to perform work-related activities since August 26, 2004. Plaintiff does not dispute this finding.

small toe, documented by an x-ray on April 18, 2006. By May 22, 2006, x-rays showed satisfactory progression of the healing. Dr. Morgan advised plaintiff to wear a regular shoe and was discharged for treatment for that condition. The next time plaintiff was seen by Dr. Morgan was April 16, 2007, when she complained of increased pain in her right knee. X-rays at that time revealed slight tibial spurs bilaterally; the diagnosis remained chrondromalacia of the knees, right greater than left. This is the extent of the medical evidence from Dr. Morgan for determining plaintiff's disability status prior to April 16, 2007. Given this medical evidence, the ALJ found that Dr. Morgan's opinion was not supported by or consistent with his own diagnostic findings, clinical observations, examination notes, and the objective medical evidence prior to April 2007.[7]

Plaintiff further argues that the ALJ did not give the proper weight to Dr. Morgan's medical assessment of June 22, 2007, wherein Dr. Morgan signifies by check marks that plaintiff could not stand/walk for two, much less six, hours of an eight hour day and that his answers would not have differed at any time during the course of his treatment. (Tr. 804.) The ALJ found that Dr. Morgan's opinion pertained to plaintiff's ability to work in June 2007, and not prior to the worsening of plaintiff's knee impairment in April 2007. Plaintiff alleges that this finding is in error because of Dr. Morgan's answer to Question 16 of his medical assessment, i.e. "Would your answer to any of the foregoing questions have been different at any time during the course of your treatment," and Dr. Morgan responded "no." (Tr. 804.) Plaintiff states that the reason she sought Dr.

---

[7] *See*, Greenspan v. Shalala, 38 F. 3d 232, 237 (5th Cir. 1994); Newton v. Apfel, 209 F. 3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. §§404.1527 (d)(3), (4); 416.927(d)(3), (4) (Supportability and Consistency defined).

Morgan's opinion as to her condition throughout the course of his treatment is because a finding as to her ability to work in June 2007 would not be applicable to the her ability to work prior to the worsening of the knee impairment in April 2007. But plaintiff does not point to any medical evidence that would support Dr. Morgan's assessment or to support a finding that her impairment was disabling prior to April 16, 2007.

The Fifth Circuit has held that the ALJ has the sole responsibility for determining a claimant's disability status and that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[8] Further, treating physician's opinions are not conclusive and can be assigned little or no weight when good cause is shown.[9] The Court's function is to review whether the ALJ's decision is supported by substantial evidence, not to independently reweigh the evidence and consider whether it would rule as the ALJ did. Here, the ALJ rejected Dr. Morgan's opinion because the evidence supported a contrary conclusion. There is simply no evidence the plaintiff points to that suggests she is impaired to the extent indicated in Dr. Morgan's assessment of June 2007. The Court finds that the ALJ fully explained his reasons for rejecting Dr. Morgan's assessment, he followed the regulations, and there is substantial evidence to support his determination not to give controlling weight to Dr. Morgan's opinion.

---

[8] Newton v. Apfel, 209 F.3d 448, 455-456 (5th Cir. 2000) citing Paul v. Shalala, 29 F.3d 208, 211 (5th Cir. 1994).

[9] "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.", Id., citing Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999); Greenspan v. Shalala , 38 F.3d 232, 237 (5th Cir. 1994).

Plaintiff then argues that Dr. Morgan's other findings would also direct a finding of disability because they show that plaintiff meets the Listing 1.02B, *Major dysfunction of a joint(s) due to any cause*, and that the ALJ erred in not making a reference to the listing in his decision. The Fifth Circuit has held that in order to meet a listed impairment, a plaintiff must show that he/she meets all the requirements of a listed impairment.[10] The burden to prove an impairment meets a listing is upon the plaintiff.[11] Plaintiff states that Dr. Morgan's check list states that she meets all of the criteria. However, plaintiff points to no medical progress notes or diagnostic testing to support the check list of items on the assessment. Instead, plaintiff cites the Fifth Circuit's decision in Audler v. Astrue.[12]

In Audler the Court first found that the ALJ erred in failing to state any reason for her adverse determination at step 3, and the Court went on to determine whether the error was harmless. In making the harmless error analysis, the Court found that Audler had submitted evidence to support the fact that she met a certain listing, and the Court found that there was no medical evidence to contradict the evidence provided by plaintiff. Therefore, the Court found that Audler met her burden of demonstrating that she met a listing and that her substantial rights were affected by the ALJ's failure to set out the bases for his decision at step three. But, Audler is distinguishable from the case at bar.

---

[10] Sullivan v. Zebley, 493 U.S. 521, 530 (1990)(claimant must manifest all the specified criteria of a particular listing to qualify for a disability under that listing.)

[11] See, Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

[12] 501 F.3d 446 (5th Cir. 2007).

9

Here, plaintiff does not offer substantial or other evidence to show that she meets all the criteria of Listing 1.02B. The only evidence put forth is a check-list medical assessment by Dr. Morgan, unsupported by medical records and tests. Plaintiff does not point to any medical evidence to support Dr. Morgan's checked-off items. Further, as stated in Audler, the ALJ is not always required to do an exhaustive point by point discussion. But, in this case, the ALJ did discuss the medical evidence and gave his reasons for rejecting or accepting same. As stated above, Fifth Circuit case law and the regulations clearly recognize that at step three of the evaluation process the burden remains on the plaintiff to establish that her impairments meet or equal an impairment enumerated in the listings. Moreover, that burden is to provide and identify medical signs and laboratory findings that support all criteria for a listed impairment.[13] Plaintiff has not met this burden, and there is sufficient evidence in the record to support the ALJ's finding that plaintiff's impairments do not meet the suggested listing by plaintiff.

Plaintiff was also treated by Dr. John Marshall for her fibromyalgia, spondylosis and osteoarthritis.[14] The records indicate that plaintiff was seen by Dr. Marshall just about every four months. On March 16, 2005, plaintiff presented to Dr. Marshall for a follow-up evaluation. The examination revealed some crepitus at the base of the thumbs, right greater than left, but plaintiff had good range of motion and her cervical mobility was quite normal. While lumbar distraction to the left appeared somewhat

---

[13] Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); 20 C.F.R. § 1520(d).

[14] Plaintiff does not discuss her treatment by Dr. John Marshall, but the Court feels these records are pertinent to the case, the ALJ's findings, and ultimate decision.

uncomfortable, her hip and knee mobility were quite normal. Plaintiff was again seen by Dr. Marshall on November 3, 2005, where he opined that a musculoskeletal examination revealed no small or large joint synovitis, and that plaintiff had adequate range of motion in the hands, wrists, elbows and shoulders, but with tenderness. Cervical spine mobility was quite adequate, and her hips, knees, ankles and subtalar joints all demonstrated good range of motion. Plaintiff underwent an MRI of the lumbar spine on November 21, 2006. The MRI revealed desiccation and minimal anterolistheses of L4 over 5 with bilateral arthropathy and mild facet arthropathy at L5-S1.(Tr. 529, 865.) No herniation or stenosis was documented and the ALJ considered these minimal degenerative changes of the lower back. (Tr. 529.) On February 27, 2007, Dr. Marshall noted that plaintiff's main problem at the time was fibromyalgia, although he also saw some degenerative changes in plaintiff's hands and knees and a degree of spondylosis. (Tr. 529, 862.) It was at this time that plaintiff mentioned that she didn't think she would be able to continue working as a home health nurse. Dr. Marshall gave no opinion/comment as to her ability to work.

As noted by the ALJ, Dr. Marshall's progress notes did not support the degree of limitation opined by Dr. Morgan. Dr. Marshall documented very few objective abnormalities to support plaintiff's ongoing complaints of pain and fatigue.[15] It was not until June 19, 2007, that Dr. Marshall opined that plaintiff was most likely unable to work due to musculoskeletal pain and fatigue. (Tr. 835-836.) Dr. Marshall diagnosed plaintiff with fibromyalgia and the ALJ accepted the proposition that plaintiff experienced some

---

[15] See Dr. Marshall's Records at 870-891.

pain prior to April 16, 2007. (Tr. 530.) However, not all pain is disabling. To be found disabling, pain must be the type of severe, persistent, and intractable pain which would be expected to preclude all work activity.[16] The medication that the Plaintiff was taking for pain was Lortab, a hydrocodone combination, which is prescribed for the treatment of mild to moderate pain. As the ALJ notes, were the plaintiff experiencing the type of severe, persistent and intractable pain which is expected to preclude all work activity, surely one of her treating physicians would have prescribed a medication to treat that type of pain. The Court agrees. Also, at the time of the hearing, plaintiff acknowledged that she had the ability to do laundry and some housework as well as care for her small dog. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical laboratory or diagnostic techniques, or is otherwise unsupported by the evidence.[17] The above evidence does not support the degree of limitations opined by Dr. Morgan in his June 2007 assessment. Therefore, the Court finds the ALJ was proper in his determination as to the severity of plaintiff's pain, and in his finding that she was limited to the performance of light work activity with no non-exertional physical limitations.

---

[16] Falco v. Shalala, 27 F. 3d 160, 163 (5th Cir. 1994)(internal citations omitted)("pain constitutes a disabling condition when it is constant, unremitting and wholly unresponsive to therapeutic treatment.").

[17] Newton, 209 F. 3d at 455; *see also*, 20 C.F.R. §§404.1527(d)(3), (4); 416.927(d)(3),(4).

Plaintiff then argues that the ALJ subordinated the findings of the treating physicians Dr. Morgan and Dr. Young to that of a non-examining physician.[18] The plaintiff states that the ALJ's decision rejects the opinions of Dr. Morgan and Dr. Young in favor of that of Dr. Michalik's assessment of January 2005. Dr. Michalik assessed plaintiff with the ability to perform the exertional demands of light work, with limited fine manipulation/fingering. (Tr. 530, 777-784.) The ALJ accepted Dr. Michalik's assessment as to plaintiff's exertional demands of light work, but he did not find that she was limited in her ability to perform fine manipulation/fingering. (Tr. 530.) The ALJ supported that decision by noting Dr. Marshall's March 2005 examination in which he found that plaintiff had full range of motion in the hands. Dr. Michalik's findings are supported by the medical evidence in the record, and consistent with the record as a whole.[19] The record indicates that plaintiff suffered from relatively mild degenerative changes in her spine and knees during the relevant period, and she did not experience disabling pain from her fibromyalgia. Therefore, as the Commissioner points out, Dr. Michalik's assessment provides substantial evidence undermining Dr. Morgan's opinion and supporting the ALJ's findings.

Finally, plaintiff argues that the ALJ erred in rejecting the findings of Dr. Young and refused to order his treatment records. Dr. Young's medical evidence consists of a

---

[18] State agency medical consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if they are supported by the evidence. *See*, 20 C.F.R. §§404.1527(f)(2), 416.927(f)(2); SSR 96-6p, 1996 WL 374180.

[19] Oldham v. Schweiker, 660 F. 2d 1078, 1084 (5th Cir. 1981)(The Commissioner was justified in accepting the opinion of a qualified reviewing physician that was supported by the evidence, and in rejecting the conclusory statement of the treating physician that was contrary to the evidence.)

medical source statement dated June 11, 2007, which included the same findings as Dr. Morgan. (Tr. 837, 837.) And, just like Dr. Morgan, Dr. Young did not provide any medical signs or laboratory findings to support his opinion, and Dr. Young provided his opinion after plaintiff's ability to work worsened. The ALJ further stated that he did not find that the progress notes or other evidence in the record indicated whether Dr. Young was a treating source, therefore his opinion was not entitled to any special deference. Plaintiff asserts that Dr. Young was one of her treating physicians and states that the record is replete with evidence that Dr. Young was a treating physician at the critical time,[20] however she could not provide any records to support Dr. Young's opinion. Plaintiff further asserts that the reason that there are no progress notes is because defendant refused to order those records. Plaintiff points to the request by counsel to the ALJ to obtain these records attached as Exhibit "A" to her memorandum in support of appeal. Plaintiff's counsel requested not only the Social Security Administration to attempt to obtain the records of Dr. Young, but he also requested that they attempt to obtain the records of Dr. Morgan of the Bone and Joint Clinic; Dr. Hathorne of Louisiana Cardiology Associates; Drs. Marshall and Boudreaux of the Baton Rouge Clinic; Dr. Phillip Barksdale; and Dr. Rebecca Sherman of the Louisiana Women's Healthcare Associates, which the Court would assume were all "treating" physicians. Further, the record was supplemented after the hearing with 93 pages of medical records from the following physicians: Dr. Morgan, Dr. Sherman, Dr. Barksdale, Dr. Boudreaux, Dr.

---

[20] See plaintiff's memorandum in support of appeal.

Marshall, Dr. Young, and the Baton Rouge Clinic. All submitted by plaintiff's attorney. Plaintiff argues that poverty prevented her from obtaining the medical records, and therefore the Social Security Administration had the duty to obtain the medical evidence and develop the record. The Fifth Circuit has found that the ALJ has a duty "to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts.[21] And, the Fifth Circuit clarifies that:

> ...if the ALJ determines that the treating physician's records are not inconclusive or otherwise inadequate to receive controlling weight, **absent other medical opinion evidence based on personal examination or treatment of the claimant**, the ALJ must seek clarification or additional evidence from the treating physician. *See Newton v. Apfel*, 209, F3d 448, 453 (5th Cir. 2000). (Emphasis supplied by the Court.)

The regulations dictate that an ALJ must seek additional evidence if the record is insufficient.[22] However, in this instance, it is clear from the ALJ's decision that the medical evidence and other evidence in the record were sufficient for the ALJ to make a determination as to the severity of plaintiff's impairments and whether or not plaintiff's impairment(s) were disabling. Further, although an ALJ has a basic obligation to develop a full and fair record, the ALJ is not required to act as the claimant's counsel or produce evidence for the claimant. It remains plaintiff's burden to prove her disability.[23] It is also plaintiff's burden to show that she was prejudiced by the ALJ's alleged failure to develop the record. Plaintiff has not done so.

---

[21] Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996.)

[22] *See*, 20 C.F.R. §§ 404.1527(c), 416.927(c).

[23] Leggett v. Chater, 67 F. 3d 558, 566 (5th Cir. 1995); *see,* 42 U.S.C. §§ 423(d)(5)(A), 1382a(3)(H)(I); *see also*, 20 C.F.R. §§404.1512(a), 404.1529(a); 416.912(a), 416.929(a).

The ALJ then found that prior to April 16, 2007, if plaintiff had the RFC to perform the full range of light work, considering her age, education, and work experience, a finding of "not disabled" would be directed by Medial-Vocational Rule 202.14. However, plaintiff's ability to perform all of the requirements of this level of work are impeded by additional limitations.[24] Therefore, the ALJ questioned the VE to determine the extent of erosion of the unskilled light work occupational base caused by these limitations. The VE testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as a file clerk and a general office clerk. Therefore, based upon the VE's testimony, the ALJ concluded that prior to April 16, 2007, the plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy, and therefore not disabled. The only argument Plaintiff asserts with regard to the VE is that the hypothetical to the VE by the ALJ should have included the fact that Dr. Morgan found that four to six times a month plaintiff experiences episodes of nausea, frequent diarrhea, and cramping lasting a day or two each (all non-exertional limitations). However, plaintiff does not provide the Court with any evidence that she suffers from these ailments, therefore the Court cannot find that this argument has merit.

---

[24] Plaintiff's RFC consists of the ability to lift and carry ten pounds frequently and twenty pounds occasionally, stand and walk six hours in a workday and sit six hours in a workday. (Tr. 528, Finding #5.) He also found that plaintiff was able to perform detailed, but not complex work activities, and was able to perform tasks requiring no more than limited interaction with the public. (Tr. 528, Finding #5.)

16

The Court finds that there is substantial record evidence to support the ALJ's decision and that the ALJ followed the proper legal standards in making his decision that plaintiff was not disabled prior to April 16, 2007.

## RECOMMENDATION

Accordingly, it is recommended that the ALJ's decision be affirmed and that the plaintiff's appeal be dismissed, with prejudice.

Signed in chambers in Baton Rouge, Louisiana, July 26, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**